IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

JUN 20 2019

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 1:19-cr-192 |
| v. | ) |
| | ) |
| WMT Brasilia S.a.r.l., | ) Count 1: |
| Defendant. | ) 15 U.S.C. §§ 78m(b)(2)(A), 78ff(b)(5) |
| | ) (Foreign Corrupt Practices Act); 18 |
| | ) U.S.C. § 2(b) (Causing) |
| | ) |

### Criminal Information

The United States charges that:

*Introduction*

At all times relevant to this Information, unless a specific date is noted:

**Relevant Statutory Background**

1.  The Foreign Corrupt Practices Act of 1977, as amended, Title 15, United States Code, Sections 78dd-1, *et seq.* ("FCPA"), was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

2.  The FCPA's accounting provisions, require that issuers, among other things, make and keep books, records, and accounts that accurately and fairly reflect the transactions and disposition of the company's assets and prohibit the knowing and willful falsification of an issuer's books, records, or accounts. 15 U.S.C. §§ 78m(b)(2)(A), 78m(b)(5), and 78ff(a).

1

## Relevant Entities and Individuals

3. Walmart Inc. ("Walmart") was, at all times relevant to the conduct described in this Statement of Facts, a Bentonville, Arkansas-based retail company. Walmart's shares were publicly traded on the New York Stock Exchange, and Walmart therefore was an "issuer" within the meaning of the FCPA.

4. WMT Brasilia was a wholly-owned subsidiary of Walmart and was a majority-owner of Walmart's wholly-owned subsidiary in Brazil, which was headquartered in Sao Paulo, Brazil ("Walmart Brazil"). Accordingly, WMT Brasilia was the majority-owner of Walmart Brazil and was the majority-owner of retail stores operating as Walmart Brazil.

5. Senior Walmart Brazil Attorney was a senior attorney at Walmart Brazil from 2007 to 2012.

6. Brazil Intermediary was a third-party intermediary ("TPI") hired by two Brazilian construction companies to obtain permits for two Walmart Brazil stores.

## Overview of the Unlawful Scheme

7. From in or around 2009 through in or around 2010, Walmart Brazil knowingly and willfully caused Walmart to maintain certain records, which did not, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of Walmart. Specifically, Walmart Brazil falsely recorded $527,000 in payments to Brazil Intermediary as payments to certain Brazil construction companies even though Walmart Brazil employees intended that the payments would go to Brazil Intermediary and knew that the payments would go to Brazil Intermediary. These false records were then consolidated into Walmart's financial records and were used to support Walmart's own financial reporting. Walmart Brazil caused these payments to be falsely recorded in Walmart's books and records.

8. Walmart Brazil earned approximately $3,624,490 in profits from certain Walmart Brazil stores built by (1) a Brazilian construction company ("Brazil Construction Company") that facilitated the indirect hiring of Brazil Intermediary on behalf of Walmart Brazil and, without Walmart Brazil's knowledge, made improper payments on Walmart Brazil's behalf directly and through Brazil Intermediary, and (2) another Brazilian construction company that facilitated Brazil Intermediary's indirect employment on behalf of Walmart Brazil, as detailed below.

### Walmart Brazil's Causing Walmart to Maintain Certain False Books, Records, and Accounts

9. Walmart Brazil did not conduct any due diligence on Brazil Construction Company prior to hiring it in 2008. Later, in or around late 2009, Brazil Construction Company failed a preliminary round of vendor due diligence. However, the Walmart Brazil Ethics and Compliance Department had no mechanism in place in 2009 to ensure that third parties who failed preliminary due diligence were suspended pending final due diligence, and, during the relevant time period, Walmart Brazil did not ensure that Brazil Construction Company was no longer used or paid. During the relevant time period, Brazil Construction Company was permitted to continue working for Walmart Brazil, and according to an employee of Brazil Construction Company who is no longer employed by Brazil Construction Company, Brazil Construction Company made improper payments to government inspectors in connection with the construction of two stores in Brazil without the knowledge of Walmart Brazil employees.

10. In or around 2009, Walmart Brazil directed Brazil Construction Company to retain an intermediary to assist it in obtaining a construction permit needed to begin construction of another store for Walmart Brazil. Brazil Construction Company retained Brazil Intermediary

who, working for and under the direction of Brazil Construction Company, assisted in obtaining the construction permit.

11. In late 2009, Walmart Brazil sought Brazil Intermediary's assistance on the same store and negotiated Brazil Intermediary's scope of work and fees directly with Brazil Intermediary. Rather than hiring Brazil Intermediary directly, Walmart Brazil instead amended the contracts with Brazil Construction Company to include a description of Brazil Intermediary's work and the cost associated with that work. All of this occurred despite red flags indicating that Brazil Intermediary was a government employee and was an individual, not a business with a registered corporate form.

12. Specifically, a Walmart Brazil Government Affairs employee informed a Walmart Brazil Ethics and Compliance employee and Senior Walmart Brazil Attorney that he believed that Brazil Intermediary was a government official and that Walmart Brazil itself was not allowed to hire civil servants. The Walmart Brazil Government Affairs employee and the Walmart Brazil Ethics and Compliance employee agreed that hiring Brazil Intermediary could expose Walmart Brazil to certain risks. Further, a member of Walmart Brazil's construction department later recounted the member's belief that Walmart Brazil could not hire Brazil Intermediary directly because Brazil Intermediary used to be a government official and did not have a company. Despite these red flags, Walmart Brazil hired Brazil Intermediary indirectly through Brazil Construction Company and later through another Brazilian construction company in connection with work on a second store in Brazil. Senior Walmart Brazil Attorney knew about the indirect hiring of Brazil Intermediary through Brazil Construction Company for the first store and was involved in a discussion regarding how Walmart Brazil would pay Brazil Intermediary.

13. In or around December 7, 2009, Senior Walmart Brazil Attorney was informed by others at Walmart Brazil that Brazil Intermediary's proposal to obtain licenses and permits for Walmart Brazil been approved by Walmart Brazil.

14. According to the same employee of Brazil Construction Company who worked on the first store and who is no longer employed by Brazil Construction Company, the employee, without the knowledge or awareness of Walmart Brazil, gave Brazil Intermediary cash in connection with obtaining the construction permit for the first store in or around July 2009 even though Brazil Intermediary had told the Brazil Construction Company employee that the some of the money was for "people I have to pay," which the employee stated he understood meant making improper payments to government employees.

15. Brazil Intermediary's ability to obtain licenses and permits quickly earned Brazil Intermediary the nickname "sorceress" or "genie" within Walmart Brazil based on Brazil Intermediary's ability to acquire permits quickly by "sort[ing] things out like magic."

16. Knowing that Walmart was a U.S. issuer, and that Walmart Brazil's books and records were used by Walmart to create financial records to be publicly filed with the U.S. Securities and Exchange Commission, Walmart Brazil falsely recorded its payments to Brazil Intermediary for its services as payments to the Brazil construction companies, not as payments to Brazil Intermediary. These records were then consolidated into and used to support certain Walmart financial reports and did not accurately and fairly reflect the transactions and dispositions of Walmart's assets in relation to the Brazil Intermediary payments.

## Count 1
### (FCPA – Causing False Books and Records)

17. Paragraphs 1-16 are realleged and incorporated by reference as though fully set forth herein.

18. Beginning at least in or around 2009, and continuing through at least in or around 2010, in the Eastern District of Virginia and elsewhere, the Defendant, **WMT BRASILIA S.A.R.L.**, knowingly and willfully falsified and caused to be falsified certain Walmart books, records, and accounts so that those books, records, and accounts did not in reasonable detail, accurately and fairly reflect the transactions and dispositions of Walmart's assets, namely in connection with the recording of payments to Brazil Intermediary, in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), 78ff(a), and Title 18, United States Code, Section 2(b).

## Forfeiture Allegation

Pursuant to Rule 32.2(a), Federal Rules of Criminal Procedure, the Defendant is hereby notified that upon conviction of Count One of the Information, it shall forfeit $3,624,490 in United States currency, representing the amount of proceeds traceable to the violations set forth in Count One of the Information.

(In accordance with 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); 21 U.S.C. § 853(p).)

ROBERT ZINK
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

_/s/_
Tarek Helou
Lorinda Laryea
Assistant Chiefs
Katherine Raut
John-Alex Romano
Trial Attorneys

G. ZACHARY TERWILLIGER
United States Attorney
United States Attorney's Office
Eastern District of Virginia

_/s/_
Jamar Walker
Assistant United States Attorney