## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

**UNITED STATES OF AMERICA**

**v.**

**WMT Brasilia S.a.r.l.**

**CRIMINAL NO. 1:19cr192**



### PLEA AGREEMENT

The United States of America, by and through the Department of Justice, Criminal

Division, Fraud Section and the United States Attorney's Office for the Eastern District of

Virginia (the "Fraud Section and the Office"), and the Defendant, WMT Brasilia S.a.r.l. (the

"Defendant" or "WMT Brasilia"), by and through its undersigned attorneys, and through its

authorized representative, pursuant to authority granted by the Defendant's Board of Managers,

hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule

11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this

Agreement are as follows:

### The Defendant's Agreement

1.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to waive its right

to grand jury indictment and its right to challenge venue in the District Court for the Eastern

District of Virginia, and to plead guilty to a one-count Information charging the Defendant with

causing a violation of the books and records provisions of the Foreign Corrupt Practices Act of

1977 ("FCPA"), in violation of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5),

78ff(a), and Title 18, United States Code, Section 2(b). The Defendant further agrees to persist

in that plea through sentencing and, as set forth below, to cooperate fully with the Fraud Section

and the Office in their investigation into the conduct described in this Agreement and other

1

conduct under the FCPA related to potential corrupt payments and related false books and records and failure to implement adequate internal accounting controls.

2.     The Defendant was the majority-owner of Walmart's wholly-owned subsidiary in Brazil, which was headquartered in Sao Paulo, Brazil. Accordingly, WMT Brasilia was the majority owner of Walmart Brazil and was the majority owner of retail stores operating as Walmart Brazil. The Defendant was also an indirect, wholly-owned subsidiary of Walmart Inc. ("Walmart" or the "Parent Company"), which was an issuer of securities registered pursuant to Title 15, United States Code, 78l. The Defendant understands that, to be guilty of the offense charged in the Information, the following essential elements of the offense must be satisfied:

        a.     The Defendant's Parent Company, Walmart, was an issuer of securities registered pursuant to Title 15, United States Code, Section 78l during the relevant time period;

        b.     The Defendant did knowingly and willfully cause Walmart to maintain certain false books, records, or accounts such that certain Walmart books, records, or accounts did not fairly reflect the transactions and dispositions of Walmart's assets.

3.     The Defendant understands and agrees that this Agreement is between the Fraud Section, the Office, and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the Fraud Section and the Office will bring this Agreement and the nature and quality of the conduct, cooperation and remediation of the Defendant, its direct or indirect affiliates, subsidiaries, and joint ventures, to the attention of other prosecuting

authorities or other agencies, as well as debarment authorities and Multilateral Development Banks ("MDBs"), if requested by the Defendant.

4.    The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that a resolution duly adopted by the Defendant's Board of Managers in the form attached to this Agreement as Exhibit 1, authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the signatures on this Agreement by the Defendant and its counsel are authorized by the Defendant's Board of Managers, on behalf of the Defendant.

5.    The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

6.    The Fraud Section and the Office enter into this Agreement based on the individual facts and circumstances presented by this case and the Defendant, including:

    a.    the Parent Company is entering into a non-prosecution agreement (the "Walmart NPA") simultaneously to the Defendant entering its guilty plea;

    b.    the Defendant did not receive voluntary disclosure credit because it did not voluntarily and timely disclose, through the Parent Company, to the Fraud Section and the Office the conduct described in the Statement of Facts attached hereto as Exhibit 2 ("Statement of Facts"). Although the Parent Company disclosed the conduct related to Brazil prior to the Fraud Section or the Office learning of that conduct, such disclosure was after the Fraud Section and the Office had already begun investigating the Parent Company relating to conduct in another country;

    c.    the Defendant received full credit for its cooperation with the Fraud Section and the Office's investigation through the Parent Company. Its cooperation included:

3

conducting a thorough internal investigation; proactively identifying issues and facts that would

likely be of interest to the Fraud Section and the Office and providing updates to the Fraud

Section and the Office; making regular factual presentations to the Fraud Section and the Office

and sharing information that might not have been otherwise available to the Fraud Section and

the Office; voluntarily making foreign-based employees available for interviews in the United

States; producing documents, including translations, to the Fraud Section and the Office from

entities in Brazil in ways that did not implicate foreign data privacy laws; obtaining cooperation

of former employees and third parties, including their consent to interviews; providing counsel to

individual employees and former employees to facilitate their cooperation; collecting, analyzing,

and organizing voluminous evidence and information for the Fraud Section and the Office; and

identifying, investigating, and disclosing conduct to the Fraud Section and the Office that was

outside the scope of the Parent Company's initial disclosures;

      d.    by the completion of the investigation, the Defendant, through the Parent

Company, provided to the Fraud Section and the Office all relevant facts known to it, including

information about the individuals involved in the conduct described in the attached Statement of

Facts and conduct disclosed to the Fraud Section and the Office prior to the Agreement;

      e.    the Defendant, through the Parent Company, has engaged in significant

remedial measures, including enhancing its anti-corruption compliance program and internal

accounting controls related to anti-corruption, including: (1) hiring a Global Chief Ethics &

Compliance Officer ("CECO") who holds an Executive Vice President position, an International

Chief Ethics & Compliance Officer ("International CECO"), and a dedicated Global Anti-

Corruption Officer, with separate reporting lines to the Audit Committee of the Board of

Directors; (2) adding dedicated regional and market Chief Ethics & Compliance Officers, foreign

4

market anti-corruption directors and anti-corruption compliance personnel at the Parent Company's home office and in the Company's foreign markets, with separate reporting lines to the Audit Committee of the Board of Directors; (3) conducting, across each of the Parent Company's markets, enhanced monthly and quarterly anti-corruption monitoring by dedicated Company Financial Controls and Continuous Improvement Teams (who monitor at the store-level), with results tracked in a centralized, real-time automated monitoring system; (4) enhancing annual anti-corruption risk assessments across all international markets; (5) enhancing on-site global anti-corruption audits to test adherence to enhanced anti-corruption related internal accounting controls and procedures; (6) enhancing anti-corruption related internal accounting controls on the selection and use of third parties, including building a custom third party automated portal to evaluate, manage and identify third party intermediaries and conducting third party audits and risk-based anti-corruption training of third parties; (7) enhancing global anti-corruption training and awareness program, including enhanced onboarding and annual in-person and computer-based anti-corruption training for Directors, senior management, and employees most likely to interact directly or indirectly with government officials; (8) implementing an automated global license management system for obtaining and renewing licenses and permits and a global donation management system, which enhances controls relating to charitable donations; and (9) terminating business relationships with third parties involved in the conduct at issue;

       f.     the Defendant, through the Parent Company, has enhanced and has committed to continuing to enhance its compliance program and internal controls;

       g.     based on the Defendant's remediation and the state of its compliance program, and the Parent Company's agreement in its NPA to retain an independent compliance

monitor, the Fraud Section and the Office determined that an independent compliance monitor was unnecessary for the Defendant;

      h.     the nature and seriousness of the offense conduct;

      i.     the Defendant has no prior criminal history; and

      j.     the Defendant has agreed to continue to cooperate with the Fraud Section and the Office in any ongoing investigation of the conduct of the Defendant, its subsidiaries, Parent Company and affiliates, and its officers, directors, employees, agents, business partners, distributors, and consultants relating to violations of the FCPA.

Accordingly, after considering (a) through (j) above, the Defendant received an aggregate discount of 25% off of the bottom of the applicable United States Sentencing Guidelines ("U.S.S.G.") fine range, as calculated below.

7.     The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

      a.     to plead guilty as set forth in this Agreement;

      b.     to abide by all sentencing stipulations contained in this Agreement;

      c.     to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

      d.     to commit no further crimes;

      e.     to be truthful at all times with the Court; and

      f.     to pay the applicable fine and special assessment.

8.     Except as may otherwise be agreed by the parties in connection with a particular transaction or any transaction disclosed to the Fraud Section and the Office prior to the date this

Agreement is entered, the Defendant agrees that in the event that, during the three years after the date of sentencing, the Defendant undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to the Defendant's consolidated operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the Fraud Section and the Office's ability to determine that there has been a breach under this Agreement is applicable in full force to that entity. The Defendant agrees that the failure to include these provisions in the transaction will make any such transaction null and void. The Defendant shall provide notice to the Fraud Section and the Office at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form. If the Fraud Section and the Office notify the Defendant prior to such transaction (or series of transactions) that it has determined that the transaction(s) has the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined in the sole discretion of the Fraud Section and the Office, the Defendant agrees that such transaction(s) will not be consummated. In addition, if at any time during the three years the Fraud Section and the Office determine in their sole discretion that the Defendant has engaged in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, it may deem it a breach of this Agreement pursuant to Paragraphs 22-24. Nothing herein shall restrict the Defendant from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not

have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and the Office.

9.      The Defendant shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts, subject to applicable law and regulations, until the later of the date upon which all investigations and prosecutions by the Fraud Section and Office arising out of such conduct are concluded, or three years from the date this Agreement is entered. At the request of the Fraud Section and the Office, the Defendant shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, as well as MDBs, in any investigation of the Defendant, Parent Company or its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts. The Defendant agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, subject to applicable law and regulation, including relevant privilege, data privacy, and national security regulations, the following:

a.      Upon request of the Fraud Section and the Office, and subject to applicable law and regulation, the Defendant shall truthfully disclose all factual information related to the conduct described in the Statement of Facts that is not protected by attorney-client privilege or attorney work product doctrine. This includes conduct of the Defendant's affiliates and present and former directors, officers, employees, agents, and consultants. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Defendant to provide to the Fraud Section and the Office, upon request, any document, record, or other tangible evidence that is not privileged or subject to the attorney work product protection about which the Fraud

8

Section and the Office may inquire of the Defendant related to the conduct described in the Statement of Facts.

b.      Upon request of the Fraud Section and the Office, the Defendant shall designate knowledgeable employees, agents, or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 9(a) above on behalf of the Defendant.  It is further understood that the Defendant must at all times provide complete, truthful, and accurate information.

c.      The Defendant shall use its best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents, and consultants of the Defendant.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities.  Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

d.      With respect to any information, testimony, documents, records, or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Defendant consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities and those of a foreign government, as well as MDBs, of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

10.      For a period of three years from the date this Agreement is entered, should the Defendant learn of any evidence or allegation of conduct that may constitute a violation of the FCPA anti-bribery or accounting provisions had the conduct occurred within the jurisdiction of

the United States, the Defendant shall promptly report such evidence or allegation to the Fraud Section and the Office. Three years after the date of the sentencing, the Defendant, by two members of its Board of Managers, will certify to the Fraud Section and the Office that the Defendant has met its disclosure obligations pursuant to this Paragraph. Each certification will be deemed a material statement and representation by the Defendant to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

11.     The Defendant agrees that any fine or restitution imposed by the Court will be due and payable within ten business days of sentencing, and the Defendant will not attempt to avoid or delay payment, except as otherwise specified in Paragraph 17 below. The Fraud Section, the Office, and the Defendant do not believe that restitution is applicable in this case. The Defendant further agrees to pay the Clerk of the Court for the United States District Court for the Eastern District of Virginia the mandatory special assessment of $400 per count within ten business days from the date of sentencing.

## The United States' Agreement

12.     In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Fraud Section and the Office agree they will not file additional criminal charges against the Defendant or any of its direct or indirect subsidiaries, joint ventures, or Parent Company (except as specified in the non-prosecution agreement with the Parent Company), or other parent corporations relating to any of the conduct described in the Statement of Facts. The Fraud Section and the Office, however, may use any information related to the conduct described in the attached Statement of Facts against the Defendant: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false

statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection against prosecution for any future conduct by the Defendant or any of its present or former parents or subsidiaries. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Defendant or any of its present or former parents or subsidiaries.

## Factual Basis

13.     The Defendant is pleading guilty because it is guilty of the charges contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and Statement of Facts are true and correct, that it is responsible for the acts of its officers, directors, employees, and agents described in the Information and Statement of Facts, and that the Information and Statement of Facts accurately reflect the Defendant's criminal conduct.

## The Defendant's Waiver of Rights, Including the Right to Appeal

14.     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Fraud Section and the Office have fulfilled all of

11

their obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

15.    The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance. The Defendant understands that by entering into the Agreement, the Defendant surrenders certain rights as provided in the Agreement. The Defendant understands that the rights of criminal defendants include the following:

(a)    the right to plead not guilty and to persist in that plea;

(b)    the right to a jury trial;

(c)    the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

(d)    the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

(e)    pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed subject to this Agreement.

Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack the conviction and sentence (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this Agreement. This Agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge challenging either the conviction or the sentence imposed in this case. The Defendant hereby waives all rights,

12

whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in the Information and Statement of Facts, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Fraud Section and the Office are free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Penalty

16.     The statutory maximum sentence that the Court can impose for a violation of Title 15, United States Code, Sections 78m(b)(2)(A) and 78m(b)(5) is a fine of $25,000,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 15, United States Code, Section 78ff(a) and Title 18, United States Code, Section 3571(c), (d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory

special assessment of $400 per count, Title 18, United States Code, Section 3013(a)(2)(B). In this case, the parties agree that the gross pecuniary gain resulting from the offense is $3,624,490. Therefore, pursuant to 18 U.S.C. § 3571(c), the maximum fine that may be imposed is $25,000,000.

### Sentencing Recommendation

17.     The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the U.S.S.G. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraphs 17-19.

18.     The Fraud Section and the Office and the Defendant agree that a faithful application of the U.S.S.G. to determine the applicable fine range yields the following analysis:

    a.     The 2016 U.S.S.G. are applicable to this matter.

    b.     <u>Offense Level</u>. Based upon U.S.S.G. § 2B1.1, the total offense level is 27, calculated as follows:

| | | |
|---|---|---|
| (a)(1) | Base Offense Level | 7 |
| (b)(1) | Amount of Loss/Gain | +18 |
| (b)(10) | Substantial Part of Scheme Committed from Outside the United States | <u>+2</u> |
| **TOTAL** | | <u>27</u> |

14

    c.    <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a)(1) and (e)(1), the base fine is $4,800,000

    d.    <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 8, calculated as follows:

        (a)    Base Culpability Score            5

        (b)(1)  the organization within which the offense was committed had 5,000 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense      +5

        (g)(2)  The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct      - 2

    **TOTAL**                       8

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $4,800,000 |
| Multipliers | 1.60(min)/3.20 (max) |
| Fine Range | $7,680,000 (min)/ $15,360,000 (max) |

19.    Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Fraud Section, the Office, and the Defendant agree that the following represents the appropriate disposition of the case:

    a.    <u>Disposition</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the Defendant agree that the appropriate disposition of this case is as set forth above, and agree to recommend jointly that the Court at a hearing to be scheduled at an agreed upon time impose a sentence requiring the Defendant to pay a criminal fine of $724,898 and

criminal forfeiture of $3,624,490, payable in full at the time of the entry of judgment following such sentencing hearing ("the recommended sentence"). The parties agree that, in light of the Walmart NPA which requires the Parent Company to pay a total monetary penalty of $137,955,249, in part as a result of conduct by the Defendant, and the criminal forfeiture of $3,624,490 imposed on the Defendant, a $724,898 fine should be imposed on the Defendant.

      b.     Forfeiture: The Defendant hereby admits and acknowledges that in connection with the criminal conduct as charged in Count One of the Information, at least $3,624,490 in proceeds was obtained. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, the Defendant agrees to forfeit $3,624,490 in United States currency (the "Forfeiture Amount"), representing the amount of proceeds traceable to the violations set forth in Count One of the Information and agrees to the imposition of an Order of Forfeiture against it and in favor of the United States in that amount. The Defendant acknowledges that more than $3,624,490 in actual proceeds have been dissipated or have been commingled with other property which cannot be divided without difficulty, such that the actual proceeds are no longer readily identifiable and available. Defendant therefore stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. No later than ten business days after the Defendant's sentencing hearing, the Defendant shall cause the transfer of the Forfeiture Amount, plus any associated transfer fees, pursuant to payment instructions provided by the United States in order to fully satisfy the forfeiture money judgment. The United States agrees that payments made by or on behalf of the Defendant shall be credited against the total monetary penalty agreed to in the Walmart

NPA. The Defendant consents to the entry of the Proposed Order of Forfeiture annexed hereto as Exhibit 3 and agrees pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A) that the Order of Forfeiture shall be final as to the Defendant at the time it is ordered by the Court.

      c.      The Defendant shall not seek or accept directly or indirectly reimbursement or indemnification from any source, other than from Walmart, with regard to the penalty or disgorgement amounts that Defendant pays pursuant to the Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in Exhibit 2. The Defendant further acknowledges that no tax deduction may be sought in connection with the payment of any part of this $724,898 fine and $3,624,490 in criminal forfeiture. The Fraud Section and the Office believe that a disposition that includes a $724,898 fine and $3,624,490 in criminal forfeiture is appropriate based on the facts and circumstances presented by this case, including the factors described in Paragraph 6 of the Agreement and those in 18 U.S.C. § 3553(a).

      d.      Mandatory Special Assessment. The Defendant shall pay to the Clerk of the Court for the United States District Court for the Eastern District of Virginia within ten days of the time of sentencing the mandatory special assessment of $400 per count.

20.      This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement

17

contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

21.    The Defendant, the Fraud Section, and the Office waive the preparation of a Presentence Investigation Report. The Defendant understands that the decision whether to proceed with the sentencing proceeding without a Presentence Investigation Report is exclusively that of the Court. In the event the Court directs the preparation of a Presentence Investigation Report, the Fraud Section and the Office will fully inform the preparer of the Presentence Investigation Report and the Court of the facts and law related to the Defendant's case, including the Defendant's and the Parent Company's substantial cooperation and remediation as described herein. The parties further agree to request that the Court combine the entry of the guilty plea and sentencing into one proceeding. The parties, however, agree that in the event the Court orders that the entry of the guilty plea and sentencing hearing occur at separate proceedings, such an order will not affect the Agreement set forth herein. In the event the Court orders separate proceedings, at the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing hearing with adequate time for (a) any objections to the Presentence Investigation Report (if the Court directs the preparation of such a report), and (b) consideration by the Court of the Presentence Investigation Report (if the Court directs the preparation of such a report) and the parties' sentencing submissions.

## Breach of Agreement

22.    If during the period of three years from the date this Agreement is entered the Defendant (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information; (c) fails to cooperate as set forth in Paragraph 8 of this Agreement; (d) commits any acts that, had they occurred within the

jurisdictional reach of the FCPA, would be a violation of the FCPA; or (e) otherwise fails specifically to perform or to fulfill completely each of the Defendant's obligations under the Agreement, regardless of whether the Fraud Section and the Office become aware of such a breach after the three years from the date this Agreement is entered, the Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the Fraud Section and the Office have knowledge, including, but not limited to, the charges in the Information described in Paragraph 1, which may be pursued by the Office in the U.S. District Court for the Eastern District of Virginia or any other appropriate venue. Determination of whether the Defendant has breached the Agreement and whether to pursue prosecution of the Defendant shall be in the Fraud Section and the Office's sole discretion. Any such prosecution may be premised on information provided by the Defendant. Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Fraud Section and the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Defendant, notwithstanding the expiration of the statute of limitations, in the three years from the date of sentencing plus one year. Thus, by signing this Agreement, the Defendant agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the period of three years from the date of sentencing plus one year. The Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution or action, except to the extent that such defenses existed as of the date of the signing of this Agreement. In addition, the Defendant agrees that the statute of limitations as to any violation of federal law that occurs during the term of the cooperation obligations provided for in

Paragraph 8 of the Agreement or three years from the date this Agreement is entered will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section and the Office are made aware of the violation or three years from the date this Agreement is entered plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

23.     In the event the Fraud Section and the Office determine that the Defendant has breached this Agreement, the Fraud Section and the Office agree to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within sixty days of receipt of such notice, the Defendant shall have the opportunity to respond to the Fraud Section and the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Fraud Section and the Office shall consider in determining whether to pursue prosecution of the Defendant.

24.     In the event that the Fraud Section and the Office determine that the Defendant has breached this Agreement: (a) all statements made by or on behalf of the Defendant to the Fraud Section and the Office or to the Court, including the attached Statement of Facts, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this

Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or senior employee, or any person acting on behalf of and at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office.

25.     The Defendant acknowledges that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Defendant breaches this Agreement and this matter proceeds to judgment. The Defendant further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

### Public Statements by the Defendant

26.     The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information and the Statement of Facts. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraphs 21-23 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information or the Statement of Facts will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section and the Office. If the Fraud Section and the Office determine that a public statement by any such person contradicts in whole or in part a statement contained in the Information or the

Statement of Facts, the Fraud Section and the Office shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information or the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or the Statement of Facts. This Paragraph does not apply to any statement made by any current or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

27.    The Defendant agrees that if it or any of its current or future direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section, the Office, and the Defendant; and (b) whether the Fraud Section and the Office have any objection to the release or statement.

## Complete Agreement

28.    This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**
**FOR WMT Brasilia S.a.r.l.:**

Date: June 20, 2019                    By: _Gordon Y. Allison_
                                           Gordon Y. Allison
                                           Class A Manager
                                           WMT Brasilia S.a.r.l.

Date: June 20, 2019                    By: _Karen P. Hewitt_
                                           JONES DAY
                                           Karen P. Hewitt
                                           Counsel for WMT Brasilia S.a.r.l.

**FOR THE DEPARTMENT OF JUSTICE:**

ROBERT ZINK                            G. ZACHARY TERWILLIGER
Acting Chief, Fraud Section            United States Attorney
Criminal Division                      United States Attorney's Office
U.S. Department of Justice             Eastern District of Virginia

_____              _____
Tarek Helou                            Jamar Walker
Lorinda Laryea                         Assistant United States Attorney
Assistant Chiefs
Katherine Raut
John-Alex Romano
Trial Attorneys

**EXHIBIT 1**

**CERTIFICATE OF CORPORATE RESOLUTIONS**

A copy of the executed Certificate of Corporate Resolutions is annexed hereto as "Exhibit 1."

## WMT Brasilia S.a.r.l.
### Resolution of the Board of Managers of WMT Brasilia S.a.r.l.
**June 7, 2019**

WHEREAS, the WMT Brasilia Board of Managers has been fully informed by counsel of the proposed settlement with Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Eastern District of Virginia (the "Fraud Section and the Office") in connection with the Fraud Section and the Office's investigation into a criminal violation of the Foreign Corrupt Practices Act ("FCPA"), and the key terms of the proposed settlement have been explained or distributed to the WMT Brasilia Board of Managers; and

WHEREAS, pursuant to the Plea Agreement between WMT Brasilia and the Fraud Section and the Office: (1) WMT Brasilia will, through an authorized agent, plead guilty to one count of causing a violation of the books and records provisions of the FCPA; (2) in light of the disposition with WMT Brasilia's ultimate parent corporation, Walmart Inc. ("Walmart"), WMT Brasilia will have a fine of $724,898 and criminal forfeiture of $3,624,490 imposed on it; and (3) WMT Brasilia will agree to the other commitments set out in the Plea Agreement; and

WHEREAS, the WMT Brasilia Board of Managers has been fully advised by counsel of its rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of entering into the Plea Agreement,

NOW, THEREFORE, BE IT RESOLVED THAT, the WMT Brasilia Board of Managers hereby approves the proposed settlement related to the completion of the proceeding against WMT Brasilia, and approves and authorizes WMT Brasilia, through its authorized agent, to enter into the Plea Agreement in substantially such form as reviewed by the WMT Brasilia Board of Managers, and the actions contemplated thereby, including the entry by WMT Brasilia of a guilty plea,

AND BE IT FURTHER RESOLVED THAT, the WMT Brasilia Board of Managers hereby empowers and obliges Gordon Y. Allison, Esq., Class A Manager, WMT Brasilia S.a.r.l., acting on the basis of the power of attorney issued by WMT Brasilia S.a.r.l. (the "Authorized Signatory"), to: (1) execute and deliver the Plea Agreement and any other documents necessary to enter into the proposed settlement with the Fraud Section and the Office; and (2) enter a guilty plea before the United States District Court for the Eastern District of Virginia and accept the sentence of said court on behalf of WMT Brasilia.

**Board of Managers**

Gordon Y. Allison, Esq., Class A Manager

_____

Geoff Adams, Class B Manager

_____

Stephane Reul, Class B Manager

_____

Antoine Berckmans, Class B Manager

**Board of Managers**

_____
Gordon Y. Allison, Esq., Class A Manager

_____
Geoff Adams, Class A Manager

_____
Stephane Reul, Class B Manager

_____
Antoine Berckmans, Class B Manager

**Board of Managers**

_____
Gordon Y. Allison, Esq., Class A Manager


_____
Geoff Adams, Class B Manager


_____
Stephane Reul, Class B Manager


_____
Antoine Berckmans, Class B Manager

Board of Managers

_____
Gordon Y. Allison, Esq., Class A Manager


_____
Geoff Adams, Class B Manager


_____
Stephane Reul, Class B Manager

_____
Antoine Berckmans, Class B Manager

## EXHIBIT 2
## STATEMENT OF FACTS

The following Stipulated Statement of Facts ("Statement of Facts") is incorporated by reference as part of the Plea Agreement (the "Agreement") between the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Eastern District of Virginia, and WMT Brasilia S.a.r.l ("WMT Brasilia"). WMT Brasilia hereby agrees and stipulates that the following information is true and accurate at all times relevant to the Statement of Facts. WMT Brasilia admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees, and agents as set forth below:

### Relevant Entities and Individuals

1.      Walmart Inc. ("Walmart") was, at all times relevant to the conduct described in this Statement of Facts, a Bentonville, Arkansas-based retail company. Walmart's shares were publicly traded on the New York Stock Exchange, and Walmart therefore was an "issuer" within the meaning of the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-1, *et seq.*

2.      WMT Brasilia was a wholly-owned subsidiary of Walmart and was a majority-owner of Walmart's wholly-owned subsidiary in Brazil, which was headquartered in Sao Paulo, Brazil ("Walmart Brazil"). Accordingly, WMT Brasilia was the majority-owner of Walmart Brazil and was the majority-owner of retail stores operating as Walmart Brazil.

3.      Senior Walmart Brazil Attorney was a senior attorney at Walmart Brazil from 2007 to 2012.

4.      Brazil Intermediary was a third-party intermediary ("TPI") hired by two Brazilian construction companies to obtain permits for two Walmart Brazil stores.

## Overview of the Unlawful Scheme

5.      From in or around 2009 through in or around 2010, Walmart Brazil knowingly and willfully caused Walmart to maintain certain records, which did not, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of Walmart. Specifically, Walmart Brazil falsely recorded $527,000 in payments to Brazil Intermediary as payments to certain Brazil construction companies even though Walmart Brazil employees intended that the payments would go to Brazil Intermediary and knew that the payments would go to Brazil Intermediary. These false records were then consolidated into Walmart's financial records and were used to support Walmart's own financial reporting. Walmart Brazil caused these payments to be falsely recorded in Walmart's books and records.

6.      Walmart Brazil earned approximately $3,624,490 in profits from certain Walmart Brazil stores built by (1) a Brazilian construction company ("Brazil Construction Company") that facilitated the indirect hiring of Brazil Intermediary on behalf of Walmart Brazil and, without Walmart Brazil's knowledge, made improper payments on Walmart Brazil's behalf directly and through Brazil Intermediary, and (2) another Brazilian construction company that facilitated Brazil Intermediary's indirect employment on behalf of Walmart Brazil, as detailed below.

## Walmart Brazil's Causing Walmart to Maintain Certain False Books, Records, and Accounts

7.      Walmart Brazil did not conduct any due diligence on Brazil Construction Company prior to hiring it in 2008. Later, in or around late 2009, Brazil Construction Company failed a preliminary round of vendor due diligence. However, the Walmart Brazil Ethics and Compliance Department had no mechanism in place in 2009 to ensure that third parties who failed preliminary due diligence were suspended pending final due diligence, and, during the

relevant time period, Walmart Brazil did not ensure that Brazil Construction Company was no longer used or paid. During the relevant time period, Brazil Construction Company was permitted to continue working for Walmart Brazil, and according to an employee of Brazil Construction Company who is no longer employed by Brazil Construction Company, Brazil Construction Company made improper payments to government inspectors in connection with the construction of two stores in Brazil without the knowledge of Walmart Brazil employees.

8.      In or around 2009, Walmart Brazil directed Brazil Construction Company to retain an intermediary to assist it in obtaining a construction permit needed to begin construction of another store for Walmart Brazil. Brazil Construction Company retained Brazil Intermediary who, working for and under the direction of Brazil Construction Company, assisted in obtaining the construction permit.

9.      In late 2009, Walmart Brazil sought Brazil Intermediary's assistance on the same store and negotiated Brazil Intermediary's scope of work and fees directly with Brazil Intermediary. Rather than hiring Brazil Intermediary directly, Walmart Brazil instead amended the contracts with Brazil Construction Company to include a description of Brazil Intermediary's work and the cost associated with that work. All of this occurred despite red flags indicating that Brazil Intermediary was a government employee and was an individual, not a business with a registered corporate form.

10.      Specifically, a Walmart Brazil Government Affairs employee informed a Walmart Brazil Ethics and Compliance employee and Senior Walmart Brazil Attorney that he believed that Brazil Intermediary was a government official and that Walmart Brazil itself was not allowed to hire civil servants. The Walmart Brazil Government Affairs employee and the Walmart Brazil Ethics and Compliance employee agreed that hiring Brazil Intermediary could

expose Walmart Brazil to certain risks. Further, a member of Walmart Brazil's construction department later recounted the member's belief that Walmart Brazil could not hire Brazil Intermediary directly because Brazil Intermediary used to be a government official and did not have a company. Despite these red flags, Walmart Brazil hired Brazil Intermediary indirectly through Brazil Construction Company and later through another Brazilian construction company in connection with work on a second store in Brazil. Senior Walmart Brazil Attorney knew about the indirect hiring of Brazil Intermediary through Brazil Construction Company for the first store and was involved in a discussion regarding how Walmart Brazil would pay Brazil Intermediary.

11.     In or around December 7, 2009, Senior Walmart Brazil Attorney was informed by others at Walmart Brazil that Brazil Intermediary's proposal to obtain licenses and permits for Walmart Brazil been approved by Walmart Brazil.

12.     According to the same  employee of Brazil Construction Company who worked on the first store and who is no longer employed by Brazil Construction Company, the employee, without the knowledge or awareness of Walmart Brazil, gave Brazil Intermediary cash in connection with obtaining the construction permit for the first store in or around July 2009 even though Brazil Intermediary had told the Brazil Construction Company employee that the some of the money was for "people I have to pay," which the employee stated he understood meant making improper payments to government employees.

13.     Brazil Intermediary's ability to obtain licenses and permits quickly earned Brazil Intermediary the nickname "sorceress" or "genie" within Walmart Brazil based on Brazil Intermediary's ability to acquire permits quickly by "sort[ing] things out like magic."

14.     Knowing that Walmart was a U.S. issuer, and that Walmart Brazil's books and records were used by Walmart to create financial records to be publicly filed with the U.S. Securities and Exchange Commission, Walmart Brazil falsely recorded its payments to Brazil Intermediary for its services as payments to the Brazil construction companies, not as payments to Brazil Intermediary. These records were then consolidated into and used to support certain Walmart financial reports and did not accurately and fairly reflect the transactions and dispositions of Walmart's assets in relation to the Brazil Intermediary payments.

**EXHIBIT 3**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CONSENT PRELIMINARY ORDER** |
| | **OF FORFEITURE/MONEY** |
| **v.** | **JUDGMENT** |
| | **CRIMINAL NO. 1:19cr192** |
| **WMT Brasilia S.a.r.l.** | |

WHEREAS, on June 20, 2019, WMT Brasilia S.a.r.l., (the "Defendant"), was charged in

a one-count Information, 19 Cr. 192 (the "Information"), with causing a violation of the books

and records provisions of the Foreign Corrupt Practices Act of 1977 (the "FCPA"), in violation

of Title 15, United States Code, Sections 78m(b)(2)(A), 78m(b)(5), 78ff(a), and Title 18, United

States Code, Section 2(b) ("Count One");

WHEREAS, the Information included a forfeiture allegation as to Count One, seeking

forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),

and Title 28, United States Code, Section 2461, of any and all property, real or personal, that

constitutes or is derived from proceeds traceable to the commission of the offense alleged in

Count One of the Information, including, but not limited to, a sum of money in United States

currency representing the amount of proceeds traceable to the commission of said offense;

WHEREAS, on  June 20, 2019, the Defendant pled guilty to Count One of the

Information, pursuant to an agreement (the "Plea Agreement") with the Department of Justice,

Criminal Division, Fraud Section and the United States Attorney's Office for the Eastern District

of Virginia (the "Government"), wherein the Defendant (1) admitted that forfeiture applies with

respect to Count One of the Information and agreed to forfeit to the United States, pursuant to

Ex. 3-1

Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, a sum of $3,624,490 in United States currency (the "Forfeiture Amount"), representing the amount of proceeds traceable to the violations set forth in Count One of the Information (the "Money Judgment") and (2) agreed to transfer $3,624,490 in United States currency plus any associated transfer fees to the United States no later than 10 business days after the Defendant's sentencing hearing, in full satisfaction of the Money Judgment;

WHEREAS, the Government agrees, pursuant to the Plea Agreement, that payments made by or on behalf of the Defendant shall be credited against the total monetary penalty agreed to by Walmart Inc., the Defendant's parent company, pursuant to a non-prosecution agreement with the Government (the "Walmart NPA") upon the Government's receipt of proof of such payments;

IT IS HEREBY STIPULATED AND AGREED, by and between the United States of America, by and through its attorneys, and the Defendant, by and through its counsel, Karen P. Hewitt, Esq. of Jones Day, that:

1.     As a result of the offense charged in Count One of the Information, to which the Defendant pled guilty, a money judgment in the amount of $3,624,490 in United States currency (the "Money Judgment") shall be entered against the Defendant.

2.     Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Consent Preliminary Order of Forfeiture/Money Judgment is final as to the Defendant, WMT Brasilia S.a.r.l., upon entry of this Consent Preliminary Order of Forfeiture/Money Judgment, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

3.     By no later than ten business days after the date of the Defendant's sentencing hearing, the Defendant shall transfer $3,624,490 in United States currency plus any associated transfer fees to the United States by wire transfer to the United States Marshals Service (or its designee) in full satisfaction of the Money Judgment.

4.     Upon execution of this Consent Preliminary Order of Forfeiture/Money Judgment, and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service (or its designee), shall be authorized to deposit the payments on the Money Judgment into the Department of Justice Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

5.     The Court shall retain jurisdiction to enforce this Consent Preliminary Order of Forfeiture/Money Judgment, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rule of Criminal Procedure.

6.     The Clerk of the Court shall forward three certified copies of this Consent Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Jamar Walker, U.S. Attorney's Office for the Eastern District of Virginia, Justin W. Williams United States Attorney's Building, 2100 Jamieson Ave., Alexandria, VA 22314.

7.     The signature page of this Consent Preliminary Order of Forfeiture/Money Judgment may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. A facsimile or electronic image of the original signature of any party executing this Consent Preliminary Order of Forfeiture/Money Judgment shall be deemed an original signature and shall constitute an original as against the party whose signature appears in the facsimile or electronic image.

**AGREED:**
**FOR WMT Brasilia S.a.r.l.:**

Date: _____          By: _____
                                  Gordon Y. Allison
                                  Class A Manager
                                  WMT Brasilia S.a.r.l


Date: _____          By: _____
                                  JONES DAY
                                  Karen P. Hewitt
                                  Counsel for WMT Brasilia S.a.r.l.


**FOR THE GOVERNMENT:**

ROBERT ZINK                          G. ZACHARY TERWILLIGER
Acting Chief, Fraud Section          United States Attorney
Criminal Division                    United States Attorney's Office
U.S. Department of Justice           Eastern District of Virginia


_____      _____
Tarek Helou                          Jamar Walker
Lorinda Laryea                       Assistant United States Attorney
Assistant Chiefs
Katherine Raut
John-Alex Romano
Trial Attorneys


SO ORDERED:


_____


Date: _____

Ex. 3-4